**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INBANK, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 13 C 1767 |
| v. | ) ) | Judge Amy J. St. Eve |
| ELBERT ELMORE, VIRGINIA BROWNING, NORMAN REIHER and ROBERT ROMERO, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 7, 2013, Plaintiff Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for InBank, filed a three-count Complaint against Defendants Elbert Elmore, Virginia Browning, Norman Reiher, and Robert Romero (collectively, "Defendants"). (R. 1, Compl.) The Complaint alleges the following: Count I – Negligence (In the Alternative to Count III); Count II – Gross Negligence (12 U.S.C. § 1821(k)); Count III – Breach of Fiduciary Duty as to Defendant Romero (In the Alternative to Count I). Defendants Browning, Reiher, and Romero filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Defendant Elmore filed a separate motion to dismiss. (R. 22; R. 28.) Defendants filed a joint memorandum in support of their motions to dismiss. (R. 25, Mem.) For the reasons set forth below, the Court denies Defendants' motions to dismiss.

## BACKGROUND

Plaintiff alleges the following facts, which the Court deems true for purposes of this motion.

InBank, an Illinois-chartered, nonmember, FDIC-insured bank was founded in 1970 under the name Interstate Bank of Oak Forest ("Interstate"). (Compl. ¶ 14.) Its main office was located in Oak Forest, Illinois, and it had branch offices in Chicago, Illinois and Tinley Park, Illinois. (*Id*.) In 2008, Interstate changed its name to InBank. (*Id*.) On September 4, 2009, the Illinois Department of Financial and Professional Regulation ("IDFPR") closed InBank and appointed the FDIC as receiver. (*Id*., ¶ 5.) Pursuant to that appointment, the FDIC succeeded to all rights, titles, powers and privileges of InBank and the stockholders, depositors, and other parties interested in the affairs of InBank. *See* 12 U.S.C. § 1821(d)(2)(A)(i) (2010).

The FDIC, as receiver for InBank, filed the instant Complaint against Defendants in an effort to recover approximately $6.8 million in losses that the bank had suffered on numerous commercial real estate ("CRE") and acquisition, development and construction ("ADC") loans. (Compl. ¶ 1.) Each Defendant was a member of InBank's Loan Committee during all relevant times for purposes of the Complaint. (*Id*., ¶¶ 7-10.) The Loan Committee was responsible for approving InBank's loans. (*Id*., ¶ 7.) Elmore was a founder of InBank and served as CEO from the founding until March 12, 2008, and as a member of the Board from the founding until July 30, 2009. (*Id*.) Browning was a Senior Vice President from the founding of the bank until March 25, 2009, and served as a member of the Board from April 20, 2005 until March 25, 2009. (*Id*., ¶ 8.) Reiher was a founder of InBank and served as a member of the Board throughout the

bank's existence. (*Id.*, ¶ 9.) Romero was InBank's Vice President of Lending and Senior Lending Officer[1] from April 19, 2005 until September 4, 2009. (*Id.*, ¶ 10.)

The FDIC alleges that in 2004, InBank began substantially expanding its lending activities outside its primary trade area of Oak Forest, Illinois. (*Id.*, ¶ 15.) The FDIC asserts that InBank increased its construction and land development loans from approximately $41 million in June 2005 to approximately $61 million in June 2006, and eventually $65 million by March 2007. (*Id.*, ¶ 16.)

The FDIC alleges that Defendants acted negligently (Count I) and grossly negligent (Count II) by disregarding the Bank's loan policies, prudent lending practices, and regulatory warnings about deficiencies in InBank's underwriting, administrative, and operational practices in connection with 15 CRE and ADC loans ("the Subject Loans") between November 30, 2005 and April 9, 2008 that totaled approximately $22 million and have caused losses to date of approximately $6.8 million. (*Id*, ¶¶ 18-39; 139-149.) The FDIC also alleges that Defendant Romero, as an Officer of the Bank and member of its Loan Committee, owed the Bank fiduciary duties to act with the utmost care and in the best interests of the Bank and that he breached those duties (Count III) by approving the Subject Loans, which he knew disregarded prudent lending practices and violated the Bank's loan policies. (*Id.*, ¶¶ 150-153.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must

---

[1] Defendants assert that Defendant Romero was Vice President, Loan Operations and not the Senior Lending Officer. (Mem. at 14.)

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

## ANALYSIS

I. **Statute of Limitations**

Defendants argue that the Complaint is untimely because the FDIC filed it nearly six months after the expiration of the statute of limitations. (Mem. at 2.) The FDIC filed this action as receiver for InBank pursuant to 12 U.S.C. § 1821(d)(2) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). FIRREA contains a provision known as the "Extender Statute" that provides a statute of limitations for actions brought by the FDIC as receiver for a failed bank. 12 U.S.C. § 1821(d)(14). The Extender Statute states, in relevant part:

> (A) In General. Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be –
>
> > (ii) in the case of any tort claim . . . the longer of –
> >
> > > (I) the 3-year period beginning on the date the claim accrues; or
> > > (II) the period applicable under State law.

4

> (B) Determination of the date on which a claim accrues. For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of –
>
> > (i) the date of the appointment of the Corporation as conservator or receiver; or
> > (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14).

The appointment of the FDIC as Receiver of InBank on September 4, 2009 triggered the Extender Statute's three year limitations period ("the federal period") under section (A)(ii)(I). Pursuant to section (A)(ii)(II), the limitations period under Illinois law for negligence, gross negligence, and breach of fiduciary duty is five years. 735 ILCS 5/13-205. Defendants assert that the three-year federal period expired on September 5, 2012 and that the appointment of the FDIC as Receiver of InBank extinguished the five-year Illinois period. (Mem. at 3.) Defendants also contend that the Complaint fails to plead either tolling or timeliness under any alternative theory or state statute of limitations. (*Id.*) Thus, Defendants argue, the March 7, 2013 filing of the Complaint was untimely and the Court should dismiss the Complaint with prejudice. (*Id*. at 3-4.)

The FDIC responds that it timely filed its claims because the parties entered into a tolling agreement ("the tolling agreement") that tolled and suspended the limitations period, and that it filed its Complaint within the limitations period pursuant to the tolling agreement. (R. 40, Resp. at 2-9.) Alternatively, the FDIC contends that even in the absence of the tolling agreement, it filed the Complaint within the alternative five-year state limitations period pursuant to 12 U.S.C. § 1821(d)(14)(A)(ii)(II) [2]. (*Id*. at 11-15.)

---

[2] The FDIC also raises an equitable estoppel argument in response to Defendants' statute of limitations defense. The Court need not address this argument in light of its rulings on the FDIC's other responses to the statute of limitations defense.

5

A. **Tolling Agreement**

Defendants' statute of limitations argument fails at this stage. Defendants argue that the Complaint is untimely on its face "and fails to plead either tolling or timeliness under any alternative theory or state statute of limitations." (Mem. at 3.) The Seventh Circuit has held that a statute of limitations defense is an affirmative defense and that complaints need not anticipate or allege facts that tend to defeat affirmative defenses. *U.S. Gypsum Co. v. Indiana Gas Co., Inc. et al.*, 350 F.3d 623, 628 (7th Cir. 2003); *see also Barry Aviation, Inc. v. Land O' Lakes Mun. Airport Comm'n.,* 377 F.3d 682, 688 (7th Cir. 2004) (finding that the resolution of the statute of limitations comes after the complaint stage). The exception to this rule arises when the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). In *Brooks*, the Seventh Circuit found that it was appropriate to consider the statute of limitations at the motion to dismiss stage because "the relevant dates [we]re set forth unambiguously in the Complaint" and because the plaintiff's substantive response to the statute of limitations defense did not apply to that case. *Id*. That is not the case here because Defendants executed a tolling agreement with the FDIC prior to the expiration of the three-year federal period. All relevant dates, therefore, are not set forth unambiguously in the Complaint.

On August 24, 2012, eleven days before the three-year anniversary of the FDIC's appointment as receiver, the FDIC and Defendants entered into a tolling agreement, which stated that "any and all statutes of limitations or other periods of limitation shall be tolled and shall not run" for 180 days, and that this tolling period "shall not be pleaded, asserted, included in any calculation of time elapsed, or relied upon in any legal argument or proceeding however styled … for purposes of computing the running of any federal or state statute of limitations." (Resp.,

Ex. C, Tolling Agreement ¶ 2.) The tolling agreement expired on February 25, 2013, giving the FDIC until March 8, 2013 (11 days after the end of the tolling period) to sue Defendants under the three-year federal period. The FDIC filed this lawsuit on March 7, 2013.

Defendants contend that the Court should not consider the tolling agreement because the FDIC failed to allege tolling in its Complaint, and because the Complaint does not make any reference to, or allegation of, a tolling agreement. (R. 41, Reply at 1-2.) While the Court's "consideration of matters outside the pleadings is not generally permitted" *See McIntyre v. McCaslin*, No. 11 C 50119, 2011 WL 6102047, at *4 (N.D. Ill. Dec. 7, 2011) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)), the Court may take notice of the tolling agreement for the purpose of determining that the allegations of the Complaint itself do not set forth everything necessary to satisfy Defendants' affirmative statute of limitations defense.[3] *Brooks*, 578 F.3d at 579; *see also G.M. Harston Constr. Co., Inc. v. City of Chicago*, 2003 WL 22508172, at *3 (N.D. Ill.); *U.S. Commodity Futures Trad. Co. v. Tunney & Assoc.*, No. 13 C 2919, 2013 WL 4565690, at *5 (N.D. Ill.).[4]

### B. Illinois Limitations Period

Even if the Court considered the statute of limitations affirmative defense at this stage, however, the argument would fail because the FDIC's claims still fall within the five-year Illinois limitations period.

---

[3] Defendants' reply brief provides further evidence that the Complaint does not set forth everything necessary to satisfy Defendants' statute of limitations defense. Defendants attach to their reply brief a number of documents that reflect some, but not all of the parties' communications regarding the Tolling Agreement. Defendants' argument that the FDIC fraudulently induced them into entering into a tolling agreement confirms that the Court cannot resolve the statute of limitations defense at this stage.

[4] Because the Court finds that the statute of limitations is an affirmative defense that the FDIC did not need to plead around in its Complaint, the Court does not address Defendants' primary statute of limitations argument based on *National Credit Union Admin. Bd. v. Credit Suisse Securities (USA) LLC, et al.*, 939 F. Supp. 2d 1113 (D. Kan. 2013).

Subpart (A) of the Extender Statute provides two separate limitations periods for bringing a tort claim in this case: (1) the three-year federal period; and (2) the five-year period applicable under Illinois law. The statute specifically states that the relevant limitations period is "the longer of" the two options. Subpart (B) of the Extender Statute also establishes two possible dates on which the claim accrues: (1) the date of the appointment of the FDIC as conservator or receiver; or (2) the date on which the cause of action accrued. The statute specifically states that the accrual date "shall be the later of" these two dates.

Defendants argue that because the FDIC filed its Complaint on March 7, 2013, the five-year Illinois limitations period applies only to loans made on or after March 7, 2008. (Reply at 11.) This interpretation would strike all but four of the Subject Loans. The plain language of the Extender Statute, however, contradicts Defendants' interpretation. *See Central States, Se. and Sw. Areas Pension Fund v. Robinson Cartage Co.*, 55 F.3d 1318, 1322 (7th Cir. 1995) (stating that the court "must first look to the plain language of the statute when interpreting its meaning") (citations omitted). The Extender Statute states that "the date on which the statute of limitations begins to run ***on any claim*** described in [subparagraph (A)] ***shall be the later of*** -" (1) the date of the appointment of the FDIC as receiver; or (2) the date on which the cause of action accrues. 12 U.S.C. 1821(d)(14)(B) (emphasis added). With respect to the Subject Loans, the later date of accrual is September 4, 2009 – the date of the appointment of the FDIC as receiver.[5] The accrual date determined by subpart (B) does not differentiate between the two limitations periods that apply to tort claims in subpart (A). *See FDIC v. McSweeney*, 976 F.2d 532, 536 (9th Cir. 1992) (finding that the state statute of limitations began to run anew when the FDIC was appointed); RTC *v. S & K Chevrolet*, 868 F. Supp. 1047 1055 (C.D. Ill. 1994) (finding "the plain wording of

---

[5] All of the Subject Loans addressed in the Complaint were made after Nov. 30, 2005, less than five years before the Bank failed on September 4, 2009. Thus, none of the claims were time-barred at the date of receivership.

the statute indicates that the accrual dates put forth in (B)(i) and (ii) apply to (A)(ii)(I) and (II) equally") (vacated, in part, on other grounds by 923 F. Supp. 135, (C.D. Ill. 1996)). With the accrual date established, the limitations period is the longer five-year period proscribed by Illinois law. 735 ILCS 5/13-205; *see also FDIC v. Wabick, et al.*, 335 F.3d 620, 626 (7th Cir. 2003) (stating "under the statute before us Congress has directed for each type of claim we have two possible sources for the limitations period . . . [w]e are to choose whichever period is longer."). Thus, the FDIC had until September 4, 2014 to file this Complaint. The FDIC's claims are timely.

## II.      Sufficiency of the Allegations

Defendants allege that the FDIC's Complaint fails to state a claim upon which relief can be granted. Specifically, Defendants assert that (1) the business judgment rule bars Counts I (negligence) and III (breach of fiduciary duty); (2) the allegations in Count II (gross negligence) do not support an inference of gross negligence; and (3) Count III is duplicative of Count I and thus the Court should dismiss it. The Court addresses each argument in turn.

### A.      Applicable Elements

The FDIC's negligence, gross negligence, and breach of fiduciary duty claims contain similar elements. *FDIC v. Giannoulias*, 918 F. Supp. 2d 768, 772 (N.D. Ill. 2013). In order to state valid claims, the FDIC must allege duty, breach, proximate cause, and damages. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (negligence); *FDIC v. Gravee*, 966 F. Supp. 622, 636 (N.D. Ill. 1997) (gross negligence); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) (breach of fiduciary duty). The standard of care for "Defendants in this case 'is that which ordinarily prudent and diligent persons would exercise under similar circumstances.'" *F.D.I.C. v. Spangler*, 836 F. Supp. 2d 778, 792 (N.D. Ill. 2011) (citing *FDIC v. Bierman*, 2 F.3d

1424, 1427 (7th Cir. 1993)). "This standard requires that the court review all of the circumstances of the particular case." *Id*.

      **B.**      **Business Judgment Rule**

Defendants assert that the Illinois business judgment rule protects them from liability on Counts I and III. (Mem. at 4-13.) "The business judgment rule is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 808 (7th Cir. 2003); *see also Bd. of Dirs. of Greenbrier Condo. Ass'n v. Greenbrier Develop. Assocs., LLC*, No. 1-12-1383, 2013 WL 3820927 (Ill. App. Ct. July 19, 2013.) Courts in this District disagree on whether a defendant may assert the business judgment rule as a defense at the motion to dismiss stage. *Compare F.D.I.C. v. Saphir*, No. 10 C 7009, 2011 WL 3876918, *5-9 (N.D. Ill. Sept. 1, 2011) (considering the business judgment rule an affirmative defense) *with Spangler*, 836 F. Supp. 2d at 792 (finding the business judgment rule is not an affirmative defense). This distinction is significant because, as discussed above, the FDIC need not plead facts in the Complaint to anticipate and defeat affirmative defenses. *See Brooks*, 578 F.3d at 579.

The Court need not resolve this disagreement, however, because, even if the business judgment rule is not an affirmative defense, the FDIC's claims would survive its invocation at this stage. It is a "prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties. If directors fail to exercise due care, then they may not use the business judgment rule as a shield to their conduct." *Davis v. Dyson*, 387 Ill. App. 3d 676, 694 (Ill. App. Ct. 2008). Here, the FDIC has sufficiently alleged that Defendants failed to exercise due care to defeat the application of the business judgment rule.

The Complaint alleges that Defendants departed from their duty of care in approving and/or increasing the Subject Loans. Specifically, the Complaint alleges that when they approved the Subject Loans, Defendants were aware of, but ignored, regulatory warnings about significant deficiencies in InBank's underwriting procedures and administrative practices regarding:

- improper and understated loan-to-value ("LTV") ratios;
- inadequate financial documentation for borrowers and/or guarantors;
- insufficient cash flow analyses;
- inadequate documentation of repayment capacity;
- reliance on inadequate appraisals;
- failures to adequately assess and monitor risk;
- failures to adjust credit grades;
- failures to avoid or reduce excessive concentrations of CRE and ADC loans;
- failures to avoid or reduce excessive levels of classified assets; and
- inadequate provisioning for loan and lease losses.

(*See, e.g.,* Compl. ¶¶ 23-30, 40.) The Complaint also alleges that Defendants failed to adhere to InBank's loan policy by ignoring policy limits on LTV ratios, ignoring policy limits on loan concentrations, failing to require defined repayment plans, and failing to require financial information sufficient to establish the borrower's repayment capacity. (*Id*., ¶¶ 19, 36, 40.) These allegations are similar to those in *Spangler* and *Giannoulias*, where the courts refused to apply the business judgment rule at the motion to dismiss stage. *See Spangler,* 836 F. Supp. 2d at 792; *F.D.I.C. v. Giannoulias*, 918 F. Supp. 2d 768 (N.D. Ill. 2013).

Defendants argue that "[t]he FDIC's own allegations show that Defendants did have policies, processes, and procedures for loan evaluations" (Mem. at 7), and that Defendants followed these processes to make informed lending decisions. (Reply at 11.) Defendants further argue that the FDIC is merely second-guessing the quality of those lending decisions. This argument, however, fails to address the FDIC's specific allegations that Defendants ignored those policies and procedures and ignored specific regulatory warnings. In citing to certain information and materials they considered and requirements and conditions they established, Defendants essentially ask this Court to weigh the evidence and find that they simply exercised their business judgment. The Court, however, cannot weigh evidence at this stage of the case. *Giannoulias*, 918 F. Supp. 2d at 773 (citing *Saphir*, 2011 WL 3876918, *4 and *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Indeed, the Court must view the allegations in the light most favorable to the FDIC. The Court, therefore, denies Defendants' motion to dismiss to the extent that it seeks dismissal based on the Illinois business judgment rule.[6]

## C. Gross Negligence

Defendants argue that the Court should dismiss Count II because the allegations in the Complaint do not support a plausible inference that Defendants were grossly negligent. In Illinois, gross negligence means "very great negligence but something less than willful, wanton and reckless conduct." *Spangler*, 836 F. Supp. 2d at 785 (citing *Gravee*, 966 F. Supp. at 636). "No allegations of lack of good faith or an intent to injure are required to sustain a claim of gross negligence under Illinois law." *Id.* (citations omitted).

---

[6] In their reply brief, Defendants identify a limited number of allegations in the Complaint that they contend blame Defendants for the acts of unnamed bank employees. (Reply at 16-17.) Defendants assert that the Illinois Banking Act protects them when they base their decisions on information provided by Bank officers. Defendants fail to cite any case law or further evidence in support of their argument. Even if the Defendants had presented a more developed argument, however, their reliance on the Illinois Banking Act constitutes an affirmative defense, which the FDIC need not attack in its Complaint. *F.D.I.C. v. Pantazelos, et al.*, No. 13 C 2246, 2013 WL 4734010, at *4 (N.D. Ill. 2013); *Saphir*, 2011 WL 3876918 at *5.

Defendants assert that the Complaint fails to properly allege gross negligence because it does not contain allegations that Defendants "knew or were very greatly negligent in not knowing that the information in the loan write-up was incorrect, that Defendants knew at the time that the loan recommendations were wrong, that they knew the conditions they set on the approvals for the Loans were inadequate, or that they knew their instructions would not be followed." (Mem. at 13.) Defendants also attack the Complaint for lacking any "facts indicating any Defendant knew at the time decisions were made that any specific Loan was unsafe or unsound." *Id.* at 14.

Defendants' argument contains two flaws. First the Complaint does allege that when Defendants approved the Subject Loans they knew the loans were unsafe and unsound. As described above, the Complaint alleges that Defendants were aware of specific deficiencies in the bank's underwriting procedures and administrative practices and approved the Subject Loans in violation of InBank policy. (Compl., ¶¶ 23-30; 40.) Second, Defendants apply the wrong legal standard. Knowledge is not a prerequisite to gross negligence. *Gravee*, 966 F. Supp. at 640 ("a reasonable jury could find for FDIC if it concludes that [the defendants'] loan underwriting and monitoring practices were seriously deficient and that defendants repeatedly disregarded [the regulator's] warnings about those deficiencies"). The Court, therefore, denies Defendants' motion to dismiss Count II.

**D.     Duplicative Claims**

Defendants argue that Count III (breach of fiduciary duty) is duplicative of Count I (negligence). Although the conduct at issue in these counts is the same, the FDIC has properly pled Count III as an alternative to Count I. Rule 8(d)(2) permits such alternate pleading. Fed. R. Civ. P. 8(d)(2); *see also Giannoulias*, 918 F. Supp. 2d at 775 (refusing to dismiss negligence and

13

breach of fiduciary duty claims as duplicative because the plaintiff pled them in the alternative).

The FDIC, therefore, may proceed with these claims in the alternative.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

**DATED: November 22, 2013**

                                         **ENTERED**

                                         _____
                                         **AMY J. ST. EVE**
                                         **U.S. District Court Judge**